## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

RALPH DOWE and TONY LITLE,     )
                                   )
    Plaintiffs,                 )
                                   )    CIVIL ACTION FILE
                                   )    NO. 4:22-CV-59 (CDL)
v.                              )
                                 )
COLUMBUS CONSOLIDATED     )
GOVERNMENT; and             )
MAYOR SKIP HENDERSON,     )
CHIEF FREDDIE BLACKMON,   )
and REATHER HOLLOWELL,    )
in their individual capacities,     )
                                 )    JURY TRIAL DEMANDED
    Defendants.               )

## SECOND AMENDED COMPLAINT

Plaintiffs Ralph Dowe ("Dowe") and Tony Litle ("Litle") (collectively, "Plaintiffs") respectfully submit the following Second Amended Complaint against Defendant Columbus Consolidated Government ("CCG"), Mayor Skip Henderson ("Henderson"), Chief of Police Freddie Blackmon ("Blackmon"), and Director of Human Resources Reather Hollowell ("Hollowell") in their individual capacities, showing the Court as follows:

## INTRODUCTION

This dispute arises from discriminatory promotional practices within CCG's Police Department, effectuated by Chief Blackmon and approved by Mayor

Henderson and/or HR Director Hollowell. Plaintiffs allege that CCG's adoption and promulgation of its Affirmative Action Plan violates the Constitution both in its formulation and in how it was applied in CCG's promotional process at the Police Department. Additionally, or in the alternative, Plaintiffs allege that Chief Blackmon discriminated against them by denying them promotions in seeking to achieve and maintain a predetermined racial and gender balance. Plaintiffs bring claims of race and gender discrimination pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and race claims under 42 USC § 1981. Plaintiffs also bring a retaliation claim pursuant to the 42 USC § 1981 and Title VII. Plaintiffs seek injunctive and equitable relief, back pay and compensatory damages to remedy these civil rights violations.

## **PARTIES**

1.     Plaintiff Ralph Dowe is a resident of Muscogee County, Georgia and submits himself to the jurisdiction of this Court.   Plaintiff Dowe is a current employee of CCG.

2.     Plaintiff Tony Litle is a resident of Muscogee County, Georgia, and submits himself to the jurisdiction of this Court. Plaintiff Litle is a current employee of CCG.

3.      Columbus Consolidated Government is a municipal corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia. CCG may be served with process by serving the Mayor at the Office of the Mayor, Government Center, 6th Floor, 100 10th Street, Columbus, GA 31901.

4.      Defendant Skip Henderson serves as the Mayor of Columbus, Georgia. He may be served with process via personal service at his place of business, Office of the Mayor, Government Center, 6th Floor, 100 10th Street, Columbus, GA 31901.

5.      Defendant Freddie Blackmon serves as the Chief of Police for CCG. Upon information and belief, Blackmon is a resident of Muscogee County and subject to this Court's jurisdiction. He may be served with process via personal service at his place of business, 510 10th Street, 4th Floor, Columbus, GA 31901.

6.      Defendant Reather Hollowell serves as the Director of Human Resources for CCG. Upon information and belief, Hollowell is a resident of Muscogee County and subject to this Court's jurisdiction. She may be served with process via personal service at her place of business, 100 10th Street, 1st Floor, Columbus, GA 31901.

## JURISDICTION AND VENUE

7.      Plaintiffs' claims under the Fourteenth Amendment and 42 U.S.C. § 1981, actionable under 42 U.S.C. § 1983,  and their claims under Title VII, present

federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. § 1331.

8.   Venue is proper in this district and division under 28 U.S.C. § 1391 because CCG conducts business in this district and division, and the unlawful actions and practices were committed within the Middle District of Georgia.

## **ADMINISTRATIVE PROCEDURES**

9.   All conditions precedent to jurisdiction under Title VII have occurred or have been met.

10.   Dowe and Litle filed timely charges of discrimination.

11.   Dowe filed his charge of discrimination on May 4, 2021.

12.   Dowe recieved his Notice of Right to Sue on February 4, 2022, entitling him to file a Title VII action within ninety (90) days of receipt of the notice.

13.   Dowe asserts his Title VII claims within ninety (90) days of receipt of his Notice of Right to Sue.

14.   Litle filed his charge of discrimination on June 18, 2021.

15.   Litle recieved his Notice of Right to Sue on December 16, 2021, entitling him to file a Title VII action within ninety (90) days of receipt of the notice.

16.   Litle asserts his Title VII claims within ninety (90) days of receipt of his Notice of Right to Sue.

17.     Plaintiffs filed timely charges of discrimination alleging retaliation on February 13, 2023.

18.     Plaintiffs recieved their Notices of Right to Sue on March 15, 2023.

19.     Plaintiffs assert their Title VII retaliation claims within (90) days of receipt of their Notices of Right to Sue.

## STATEMENT OF FACTS

*Dowe & Litle*

20.     Dowe and Litle are white men.

21.     Dowe began working for CCG on July 10, 1989.

22.     Litle began working for CCG on January 14, 1994.

23.     CCG promoted Dowe to Sergeant in March 2000 and to Lieutenant in March 2013.

24.     CCG promoted Litle to Sergeant in June 2000 and to Lieutenant in November 2014.

25.     Dowe and Litle have both obtained master's degrees.

26.     Dowe has received no disciplinary action since 2007.

27.     Litle has received no disciplinary action since 2003.

*CCG's Affirmative Action Plan*

28.     CCG adopted an Affirmative Action Plan in 2015 under the leadership of then-Mayor Teresa Tomlinson.

29.    In 2020, CCG updated its Affirmative Action Plan and reaffirmed its commitment to the program.

30.    Each year, CCG's Mayor, City Manager, and Affirmative Action Administrator approve the Affirmative Action Plan.

31.    Department Directors and Division Chiefs are charged with "carrying out the policy of affirmative action in the area in which they have authority."

32.    The objective of the Affirmative Action Plan is "to achieve ... an employee profile, in each major job classification, which is an appropriate reflection of the minority and female availability in [the Columbus] Metropolitan Statistical Labor Area." In part, "[t]his objective calls for achieving the full utilization of minorities and women in the total workforce and at all levels of the City Government."

33.    To achieve this sweeping, facially discriminatory goal, the Affirmative Action Plan requires the Mayor and City Manager to "place a priority on filling upper-level supervisory, managerial, and executive positions with minority/female qualified candidates where underutilization exists."

34.    It also requires Department Directors and Division Chiefs "to identify and remove barriers obstructing the achievement of specified goals and objectives" and requires the "review [of] qualifications of all employees to ensure that

minorities, disabled persons, and women are given full opportunities for transfers, promotions, training, salary increases, and other forms of compensation."

35.    Absent from the Affirmative Action Plan is any mention of ensuring that non-minorities or men are given equal consideration.

36.    CCG's Affirmative Action Program Report reflects that, as of the 2010 Census, the total Columbus workforce was comprised of 45.2% minority members.

37.    Despite the Affirmative Action Program Report stating that, based on workforce statistics, minorities are not underutilizied in protective services, CCG, by and through its officials, continues to employ its Affirmative Action Plan within the police department.

*Blackmon Fails to Make Promotions to His Command Staff in an Effort to Avoid Promoting White Men*

38.    Freddie Blackmon became the acting Chief of Police for CCG on November 1, 2020.

39.    Blackmon is a black man.

40.    When Blackmon became the Chief of Police, there were five open command staff positions, including one Assistant Chief and four Major positions.

41.    To be eligible for the Assistant Chief position, an individual was required to have held the rank of Captain for two years or the rank of Major for one year and to possess a master's degree.

42.     To be eligible for the Major position, an individual was required to have held the rank of Captain for one year and to possess a master's degree.

43.     Blackmon could have immediately filled at least four, if not all five, of these positions with internal candidates who had already achieved the rank of Captain and were eligible for command staff positions under the existing criteria.

44.     All of the Captains eligible for promotion to Assistant Chief and Major were white: three were men, and one was a woman.

45.     There was also one black female Major who was eligible for promotion to Assistant Chief.

46.     One black female Captain was eligible for promotion to Major.

47.     Two other minority male Captains were not qualified or eligible for command staff positions.

48.     By statute, the Columbus Police Department is limited to seven Captains. (Ord. No. 20-058, Sec. 17-34(i)(1)).

49.     Rather than fill the command staff vacancies by promoting the four eligible white Captains, Blackmon instead changed the command staff eligibility criteria so that he could promote more minorities and women into the command staff positions.

50.   Had Blackmon promoted the four eligible white candidates to command staff positions, the four Captain positions those individuals held would, in turn, have opened.

51.   Had Blackmon promoted the black female candidate from a Captain position to a Major position, her Captain position would have also opened, totaling five open Captain positions.

52.   At that time, the 2018 Captain's promotional list (i.e., the list of Lieutenants eligible for promotion to Captain generated in 2018) was in effect.

53.   Per the 2018 Captain's promotional list, Dowe and Litle were highly qualified for promotion to Captain; they had the second and third highest seniority, respectively; and both had attained master's degrees.

54.   The 2018 Captain's promotional list comprised four white men and one black woman.

55.   Blackmon avoided making promotions to the command staff to avoid a majority white command staff and to avoid promoting highly qualified white men to Captain.

*Blackmon Reorganizes and Restructures the Police Department to Benefit Minority and Women Applicants*

56.   Instead of promoting those already eligible for command staff positions, Blackmon lowered the qualifications for the command staff positions by lowering educational and time-in-rank requirements.

57.     Blackmon changed the title of the "Major" position to "Deputy Chief."

58.     Blackmon added an additional Assistant Chief position despite there being no need for such a position; larger police departments across the state only have one Assistant Chief position.

59.     Blackmon added a Chief of Staff/Public Information Officer position.

60.     For the position of Assistant Chief, Blackmon changed the time-in-rank qualification to one year in a Captain or Deputy Chief position or two years in a Lieutenant position. He also changed the educational requirement of a master's degree to a requirement of a bachelor's degree with a preference for a master's degree.

61.     For the position of Deputy Chief, Blackmon changed the time-in-rank qualification to one year in a Captain position or two years in a Lieutenant position. He also changed the educational requirement of a master's degree to a requirement of a bachelor's degree with a preference for a master's degree.

62.     The Mayor, the City Manager, the Director of Human Resources, and the City Council Members considered, supported, and approved Blackmon's changes.

63.     CCG effectuated these changes on December 15, 2020.

64.     By decreasing the time-in-rank and educational requirements, Blackmon made his promotional pool less qualified and more heavily minority.

65.     While Blackmon's changes made Dowe and Litle eligible for command staff positions (since Lieutenants could not be promoted into such roles), the overall effect was to greatly increase the percentage of the eligible pool that was non-white and female.

66.     Since Blackmon did not make any promotions before effectuating his reorganization, the 2018 promotional lists (including the 2018 Captain list described above) expired.

67.     Since the 2018 promotional lists expired, the Lieutenants were required to undergo a new round of assessment center testing to be placed on the 2020 promotional list.

*CCG's Continued Racial and Gender Balancing in its Promotional Process*

68.     CCG makes promotions to the rank of Captain per the process set out by Ordinance 20-058, Sec. 17-26.3. Police Lieutenants must apply to the assessment center and those deemed eligible will participate in a minimum of three exercises that are designed to evaluate job-related dimensions. Based upon their performance, the eligible Lieutenants are categorized as "highly recommended for promotion" or "recommended for promotion." Those who score below the recommended standard are not considered for promotion.

69.     Per Ordinance 20-058, Sec. 17-26.4, the Police Chief is required to promote those categorized as "highly recommended for promotion" prior to those

characterized as "recommended for promotion." The Police Chief is also required to consider the reports on each participant from the assessment center, as well as education, seniority, performance evaluations, disciplinary actions, and commendations.

70.     After Blackmon let the 2018 promotional lists expire (as pled above), Dowe, Litle, and other officers interested in promotion undertook a new testing process, resulting in the generation of new, 2020 promotional lists.

71.     Dowe and Litle were deemed "highly qualified" or highly recommended for promotion, on the 2020 Captain's Promotional List.

72.     CCG makes promotions to the ranks of Lieutenant and Sergeant using a similar process. *See* Ordinance 20-058, Secs. 17-26.1, 17-26.2.

73.     By statute, the Police Chief may appoint Assistant Chiefs, Deputy Chiefs,  and the Chief of Staff. *See* Ordinance 20-058, Secs. 17-30, 17-31, 17-32.

74.     On December 30, 2020, Blackmon made various promotions across the Police Department.

75.     He did not promote Dowe or Litle.

76.     Blackmon promoted Captain Joyce Dent-Fitzpatrick, a black woman, and Captain Debra Kennedy, a white woman, to the Assistant Chief positions.

77.    By promoting Dent-Fitzpatrick and Kennedy, Blackmon named the first two female Assistant Chiefs in CCG's history, and to achieve a racial balance, one was white and one was black.

78.    Blackmon promoted four men to Deputy Chief: Lieutenant Lance Deaton, a white man; Lieutenant Roderick Graham, a black man; Captain Thomas Dent, a white man; and Captain Roland Hastings, a white man.

79.    Blackmon did not promote Captain William Rawn, a white man, to a command staff position despite the fact that he was eligible for a command staff position under the Police Department's promotional qualifications both before and after Blackmon changed them on December 15, 2020.

80.    Blackmon promoted Sergeant Katina Williams, a black woman, to Chief of Staff, a newly created position.

81.    Blackmon promoted Lieutenant Consuelo Askew, a black woman; Lieutenant David Blackstock, a white man; Lieutenant Kevin Hamer, a white man; and Lieutenant Gregory Touchberry, a white man, to Captain.

82.    In so doing, Blackmon promoted every black Lieutenant eligible for a promotion (Graham and Askew).

83.    Likewise, Blackmon promoted every female Captain and Lieutenant eligible for a promotion (Dent-Fitzpatrick, Kennedy, and Askew).

84.     Mayor Skip Henderson and HR Director Reather Hollowell reviewed and approved each of Blackmon's appointments and promotions.

85.     Blackmon stated in interviews that his goal was to diversify the command ranks. A December 30, 2020 article published by WTVM quotes Blackmon as saying, "Diversity is important because it gives you a different view point. It gives you a different perspective a (sic) far as how certain matters should be addressed. So, with this command staff in place, I feel very confident that we'll be able to go forward and engage our community even more."

86.     The same December 30, 2020 article, quotes newly-appointed Deputy Chief Lance Deaton as saying, "This is an opportunity for this group to be more diverse and more in tune with what our community wants and what's best for our police officers and our employees."

*Blackmon Promoted Less Qualified Individuals*

87.     Many of the individuals Blackmon promoted over Dowe and Litle were less qualified for their positions.

88.     For example:

a.      Askew, who Blackmon promoted to Captain, had less seniority, had spent less time in supervisory positions than Dowe and Litle, and had a more significant disciplinary history than Dowe and Litle including a suspension for conduct unbecoming an officer;

14

b.      Dent-Fitzpatrick, who Blackmon promoted to Assistant Chief, had a more severe disciplinary history than Dowe and Litle, including two police car wrecks in 2008 and 2018 and a written reprimand in 2015 for an error in allowing a sergeant to review another sergeant; and

c.      Graham, who Blackmon promoted to Deputy Chief, scored lower than Dowe and Litle on the Captain's assessment, had a more severe disciplinary history than Dowe and Litle, was arrested for DUI, and had less seniority than Dowe.

*Blackmon Also Makes Racially Balanced Promotions at Lower Levels in the Police Department*

89.      On January 29, 2021, Blackmon promoted seven Sergeants into Lieutenant positions.

90.      Blackmon promoted three black candidates and four white candidates. There were fifteen white candidates and four black candidates categorized as "highly qualified" and thus eligible for promotion to Lieutenant.

91.      Blackmon passed over eight white candidates, of which six were men, with higher assessment center scores than Michael Peyton and Patrick Smith, two of the black candidates he promoted.

92.   Blackmon passed over six white candidates, of which four were men, with higher seniority than Peyton.

93.   Blackmon promoted Peyton to Lieutenant despite knowing Peyton was under investigation for sexual impropriety.

94.   Since his promotion to Lieutenant, Peyton has been terminated from the Police Department.

95.   On January 29, 2021, Blackmon promoted eight Corporals into Sergeant positions.

96.   Four Corporals were "highly qualified" or highly recommended for promotion, so Blackmon had to promote each of them. There was one black woman, one black man, one white woman, and one white man.

97.   Blackmon had discretion to select four other Corporals from the "qualified" or recommended for promotion list. Twelve Corporals were eligible: ten white men and two black men.

98.   Blackmon further achieved racial balancing by promoting two black men and two white men from the "qualified" list.

99.   The two black officers had less education than the white applicants that were not slected.

100.   On January 29, 2021, Blackmon selected one black man, one black woman, one white man, and one white woman for the open corporal positions to achieve racial and gender balancing.

*CCG Also Racially and Gender Balances its Squad Assignments*

101.   In late April or early May 2021, Assistant Chief Dent-Fitzpatrick ordered a Deputy Chief to "diversify" the ranks.

102.   Dent-Fitzpatrick ordered the Deputy Chiefto put one woman and one black man on each squad.

103.   Dent-Fitzpatrick also commented that an officer in the sex crimes unit was not "black enough" to meet her diversity requirement.

104.   To effectuate Dent-Fitzpatrick's order, one of the female officers, a white woman, was moved to a new squad.

*Governmental and Decisionmaker Liability*

105.   At all times material to this Complaint, it was clearly established law that subjecting an employee to race and/or gender discrimination violates the Equal Protection Clause. It was also clearly established law that race discrimination violates 42 U.S.C. § 1981.

106.   The individual Defendants were, at all times material to this Complaint, the highest Department officials with authority to hire, fire, transfer, demote,

17

promote, discipline, and take personnel actions affecting employees including Dowe and Litle.

107.   The individual Defendants' above-pled employment actions were not subject to, and did not require, higher review or approval.

108.   When taking each of their decisions and actions at issue in this case, the individual Defendants acted under color of State and local laws including, *inter alia*, such laws defining their authority to make such personnel decisions.

109.   In denying Dowe and Litle promotions because of their race and gender, CCG and the individual Defendants acted pursuant to CCG's AAP, which is an official, written policy of CCG.

110.   The AAP is facially invalid because, *inter alia*, it directs CCG's officials (including the individual Defendants) to make promotional and other personnel decisions because of race and gender in order to achive and maintain a prescribed racial balance in each position.

111.   Additionally and in the alternative, the AAP is invalid as applied to the Defendants' decisions to deny Plaintiffs' promotions, because, pursuant to the Plan, the Defendants denied Dowe and Litle promotions because of their race and/or gender.

112.   Additionally and in the alternative, even if the Defendants did not act pursuant to the AAP in denying Dowe and Litle promotions, they denied Dowe and

Litle promotions because of their race and/or gender pursuant to the Defendants' own racial and gender animus (including their own desires, independent of the AAP, to achieve and maintain a desired racial balance in each position in the police department).

113.   Because of the City's unlawful and discriminatory actions and practices, Plaintiffs have suffered and continue to suffer garden variety emotional damages, backpay and economic damages due to lost pension contributions at higher salaries, and other resulting damages.

*Punitive Damages*

114.   The individual Defendants undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Dowe and Litle and their federally protected rights.

115.   Additionally, and in the alternative, the individual Defendants undertook all the above-pled conduct with reckless disregard for Dowe and Litle and their federally protected rights.

**Post-Complaint Developments**

116.   On September 13, 2022, the CCG Council proposed a new Pay Plan for the Columbus Police Department.

117.   On October 11, 2022, Chief Blackmon proposed that promotions be delayed until January 31, 2023 so that the Pay Plan could go into effect prior to the promotions.

118.   By delaying the promotions, Chief Blackmon would also allow current promotional rosters to expire (the Captains list would expire on December 2, 2022 and the Lieutenants list would expire on January 12, 2023) and thus make his pool of applicants more minority-inclusive than it currently was.

119.   For example, Shantrice Murphy, a black female, had not yet achieved enough time in grade to be promoted to Deputy Chief at the time the promotions were set to occur, but, upon information and belief, Chief Blackmon wanted to promote her to Deputy Chief to fill the spot of the outgoing Deputy Chief Wanna Barker-Wright, another black female.

120.   In response, the Council froze the existing promotional rosters until fourteen days following January 31, 2023 in Ordinance No. 22-054, passed on October 25, 2022.

121.   In early January 2023, Chief Blackmon met with his command staff to discuss upcoming promotions.

122.   As to Captain promotions, Assistant Chief Debra Kennedy stated that her order of preferance was Dowe, then Litle, then William Browning (nee Gasaway), then Weatherford.

123.   Deputy Chief Hastings stated that he believed Litle does his job well, and that Browning and Weatherford would not be his top choices for promotion.

124.   Upon information and belief, Deputy Chief Dent and Deputy Chief Deaton expressed that Litle was their first choice for a Captain promotion and Dowe was their second choice for a Captain promotion.

125.   Upon information and belief, Assistant Chief Dent-Fitzpatrick and Deputy Chief Graham did not offer an opinion on Captain promotions.

126.   Ultimately, Chief Blackmon promoted William Browning to Captain over Dowe and Litle.

127.   Chief Blackmon also promoted William Rawn to Deputy Chief over Dowe and Litle.

## COUNT I
## VIOLATION OF THE EQUAL PROTECTION CLAUSE
## RACE DISCRIMINATION

128.   Plaintiffs hereby reallege all preceding paragraphs of this Complaint as if each paragraph had been fully and completely restated herein.

129.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Dowe and Litle to equal protection under the laws, including equal protection with respect to race.

130.   No compelling or other governmental interest supports the Defendants' use of race as the basis for employment decisions giving rise to this Complaint.

131.   To the extent any such interest existed, Defendants' use of race classifications was not narrowly tailored nor the least restrictive means by which the City could have effectuated such interest.

132.   Defendants violated Dowe and Litle's rights to equal protection by subjecting them to race discrimination. The Defendants' conduct constitutes unlawful discrimination based upon race, in violation of the Equal Protection Clause.

133.   Defendants undertook all the unlawful conduct towards Dowe and Litle's claims while acting under color of state law.

134.   As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Dowe and Litle have suffered damages including garden variety emotional distress, inconvenience, losses of income and benefits, humiliation, and other indignities.

135.  Defendants' unlawful conduct violated clearly established law prohibiting making promotion decisions because of race.

136.  The individual Defendants undertook this unlawful conduct intentionally and maliciously with respect to Dowe and Litle and their federally protected rights, entitling Dowe and Litle to recover punitive damages against the City.

137.   Additionally, or in the alternative, the individual Defendants undertook unlawful conduct recklessly with respect to Dowe and Litle and their federally

protected rights, entitling them to recover punitive damages against Defendants Henderson, Blackmon, and/or Hollowell.

## COUNT II
## VIOLATION OF THE EQUAL PROTECTION CLAUSE
## GENDER DISCRIMINATION

138.   Plaintiffs hereby reallege all preceding paragraphs of this Complaint as if each paragraph had been fully and completely restated herein.

139.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Dowe and Litle to equal protection under the laws, including equal protection with respect to gender.

140.   No compelling or other governmental interest supports the Defendants' use of gender as the basis for employment decisions giving rise to this Complaint.

141.   To the extent any such interest existed, Defendants' use of gender classifications was not narrowly tailored nor the least restrictive means by which the City could have effectuated such interest.

142.   Defendants violated Dowe's and Litle's rights to equal protection by subjecting them to gender discrimination. The Defendants' conduct constitutes unlawful discrimination based upon gender, in violation of the Equal Protection Clause.

143.   Defendants undertook all the unlawful conduct towards Dowe's and Litle's claims while acting under color of state law.

144.   As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Dowe and Litle have suffered damages including garden variety emotional distress, inconvenience, losses of income and benefits, humiliation, and other indignities.

145.   Defendants' unlawful conduct violated clearly established law prohibiting making promotional decisions because of gender.

146.   The individual Defendants undertook this unlawful conduct intentionally and maliciously with respect to Dowe and Litle and their federally protected rights, entitling Dowe and Litle to recover punitive damages against them.

147.   Additionally, or in the alternative, the individual Defendants undertook unlawful conduct recklessly with respect to Dowe and Litle and their federally protected rights, entitling them to recover punitive damages against Defendants Henderson, Blackmon, and/or Hollowell.

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

148.   Plaintiffs incorporate by reference all preceding paragraphs of the Complaint.

149.   Defendants discriminated against Plaintiffs in promotion decisions because of race.

150. Defendants' stated reason for failing to promote Plaintiffs is pretext for racial discrimination.

151. Defendants' promotional practices violate 42 U.S.C. § 1981 ("Section 1981").

152. Defendants willfully and wantonly disregarded Plaintiffs' rights under Section 1981 and acted in reckless disregard for Plaintiffs' rights under Section 1981.

153. Defendants' discriminatory actions against Plaintiffs were taken in bad faith.

154. As a result of Defendants' discriminatory treatment of Plaintiffs, Plaintiffs have suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

155. Pursuant to Section 1981, Plaintiffs are entitled to damages including, back pay and lost benefits, front pay, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

## COUNT IV
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII
## (DEFENDANT CITY OF COLUMBUS)

156. Plaintiffs incorporate by reference all preceding paragraphs of the complaint.

157.   Defendant CCG discriminated against Plaintiffs by failing to promote them because of their race.

158.   Any reason proffered by Defendant for failing to promote Plaintiffs is pretext for racial discrimination.

159.   As a result of the City of Columbus' discriminatory treatment of Plaintiffs, they have suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

160.   Pursuant to Title VII, Plaintiffs are entitled to damages including, back pay and lost benefits, front pay, compensatory damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Title VII.

## COUNT V
## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
## (DEFENDANT CITY OF COLUMBUS)

161.   Plaintiffs incorporate by reference all preceding paragraphs of the complaint.

162.   Defendant City of Columbus discriminated against Plaintiffs by failing to promote them because of their gender.

163.   Any reason proffered by Defendant for failing to promote Plaintiffs is pretext for gender discrimination.

164.   As a result of the City of Columbus' discriminatory treatment of Plaintiffs, they have suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

165.   Pursuant to Title VII, Plaintiffs are entitled to damages including, back pay and lost benefits, front pay, compensatory damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Title VII.

## COUNT VI
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981
## (ALL DEFENDANT CCG and BLACKMON)

166.   Plaintiffs incorporate by reference all preceding paragraphs of the Complaint.

167.   Plaintiffs engaged in protected activity under § 1981 by filing EEOC Charges and lawsuits alleging racial discrimination.

168.   Defendants' actions, in subjecting Plaintiffs to retaliation for engaging in protected activity by complaining of, and opposing, race discrimination, constitute unlawful intentional retaliation in violation of § 1981.

169.   Defendants willfully and wantonly disregarded Plaintiffs' rights, and Defendants' retaliation against Plaintiffs was undertaken in bad faith.

170.   As a result of Defendants' unlawful actions, Plaintiffs have suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

171.   Pursuant to § 1981, Plaintiffs are entitled to damages, including back pay and lost benefits, front pay and/or instatement, compensatory damages, punitive damages (against the individual defendants), attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

### COUNT VII
### RETALIATION IN VIOLATION OF TITLE VII
### (DEFENDANT CITY OF COLUMBUS)

172.   Plaintiffs incorporate by reference all preceding paragraphs of the Complaint.

173.   Plaintiffs engaged in protected activity under Title VII by making filing EEOC Charges and lawsuits alleging gender and racial discrimination.

174.   Defendant City's actions in subjecting Plaintiffs to retaliation for opposition and participation conduct violates Title VII.

175.   Defendant City willfully and wantonly disregarded Plaintiffs' rights, and Defendant City's retaliation against Plaintiffs was undertaken in bad faith.

176.   As a result of Defendant City's unlawful actions, Plaintiffs have suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

177.    Pursuant to Title VII, Plaintiffs are entitled to damages, including back pay and lost benefits, front pay and/or instatement, compensatory damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Title VII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully invoke the powers of this Court and pray for the following:

a)    That the Court grant trial by jury;

b)    That the Court permanently enjoin the City from discriminating against Plaintiffs on any basis forbidden the Equal Protection Clause, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act, 42 U.S.C. 2000e;

c)    That the Court issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiffs' rights to be free from discrimination and retaliation under the Equal Protection Clause, 42 U.S.C. § 1981, and Title VII; and that the Court permanently enjoin the City from such conduct in the future;

d)    That Plaintiffs have and recover from the City all amounts available under the Equal Protection Clause, 42 U.S.C. § 1981, and Title VII including but not limited to back pay, front pay, compensatory

damages, damages for mental anguish, benefits, and all other damages allowed by law;

e) That the Court award pre-judgment and post-judgment interest to Plaintiffs on any of the above amounts;

f) That Defendants be ordered to pay to all of Plaintiffs' costs and attorney's fees of this action;

g) That Plaintiffs recover punitive damages against the individual Defendants; and

h) That the Court grant such other and further equitable and monetary relief as it deems equitable, just and proper.

Respectfully submitted this 21st day of March 2023.

LEGARE, ATTWOOD & WOLFE, LLC

s/ *Eleanor Mixon Attwood*
Georgia Bar No. 514014
emattwood@law-llc.com
Marissa R. Torgerson
Georgia Bar No. 848356
mrtorgerson@law-llc.com

Decatur Town Center Two
125 Clairemont Ave, Ste. 380
Decatur, Georgia 30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| RALPH DOWE and TONY LITLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| | ) | NO. 4:22-CV-59 (CDL) |
| i. | ) | |
| | ) | |
| COLUMBUS CONSOLIDATED | ) | |
| GOVERNMENT; and | ) | JURY TRIAL DEMANDED |
| MAYOR SKIP HENDERSON, | ) | |
| CHIEF FREDDIE BLACKMON, | ) | |
| and REATHER HOLLOWELL, | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2023, I electronically filed this **SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to the following counsel of record via the Court's CM/ECF filing system:

| | |
|---|---|
| Carter P. Schondelmayer | carter@pagescrantom.com |
| James C. Clark, Jr. | jclark@pagescrantom.com |
| Julie Dorchak Johnson | jjphnson@pagescrantom.com |
| Clifton C. Fay | cfay@columbusga.org |
| Lucy T. Sheftall | lsheftall@columbusga.org |

*[SIGNATURE ON FOLLOWING PAGE]*

LEGARE, ATTWOOD & WOLFE, LLC
*s/ Eleanor M. Attwood*
Eleanor M. Attwood
Georgia Bar No. 514014